WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kevin L Sanders, | No. CV-24-00787-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Kevin L. Sanders's appeal from the Commissioner of the Social Security Administration's ("SSA," "Commissioner," or "Defendant") denial of Social Security benefits. (Doc. 13-3). The appeal is fully briefed (Doc. 17; Doc. 18; Doc. 19), and the Court now rules.

**I.  BACKGROUN\D**

**A. Factual Overview**

Plaintiff was 36 years old on his alleged disability onset date, and he has a high school education. (Doc. 13-3 at 31). His past relevant work includes cook, painter, warehouse worker, and driver. (*Id.* at 30). Plaintiff filed his Social Security Disability Insurance (SSDI) benefits application on April 23, 2021, alleging disabilities beginning on February 1, 2021. (Doc. 17 at 1). An ALJ denied Plaintiff's claim on April 6, 2023, after an administrative hearing. (Doc. 13-3 at 32, 87).  The SSA Appeals Council denied a request for review of that decision and adopted the ALJ's decision as the agency's final decision on February 16, 2024. (Doc. 17 at 2).

### A. The SSA's Five-Step Evaluation Process

To qualify for Social Security Disability Insurance benefits, a claimant must show that he "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to any medically determinable physical or mental impairment. *Id.* § 423(d)(1). The impairment must be of such severity that the claimant cannot do his previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At Step One, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," i.e., doing "significant physical or mental activities;" and (2) "gainful," i.e., usually done "for pay or profit." 20 C.F.R. § 416.972(a)–(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At Step Two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At Step Three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to Step Four. *Id.* §§ 404.1520(a)(4)(iii), 404.1520(e). The claimant's RFC is his ability perform physical and mental work activities "despite his limitations," based on all relevant

evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)–(2).

At Step Four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "his past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e). "Past relevant work" is work the claimant has "done within the past 15 years, that was substantial gainful activity." *Id.* § 404.1560(b)(1). If the claimant has the RFC to perform his past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform his past relevant work, the ALJ will proceed to Step Five in the sequential evaluation process.

At Step Five, the final step, the ALJ considers whether the claimant "can make an adjustment to other work," considering his RFC, age, education, and work experience. *Id.* § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

### B.     The ALJ's Application of the Factors

Here, at Step One, the ALJ concluded that the record established that Plaintiff had not engaged in substantial gainful activity since February 1, 2021, the alleged onset date. (Doc. 13-3 at 23).

At Step Two, the ALJ determined that Plaintiff had the following severe impairments: "right shoulder avascular necrosis and right hip arthroplasty for avascular necrosis." (*Id.* at 24).

At Step Three, the ALJ found that Plaintiff did not have any impairment or combination of impairments that met or medically equaled a listed impairment in Appendix 1 to Subpart P of 20 C.F.F. Part 404. (*Id.* at 26). Subsequently, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a), except with the following restrictions:

> He can frequently balance and stoop and can occasionally kneel, crouch, and climb ramps and stairs, but can never crawl or climb ladders, ropes, and scaffolds. He can occasionally reach overhead to the right, reach right to the front, and reach right laterally. The claimant can have occasional exposure to hazards such as moving machinery and unprotected heights. [He can alternate] between sitting and standing for a few minutes as frequently as every half hour without loss of productivity. The claimant requires a handheld assistive device when ambulating.

(*Id.* at 26).

At Step Four, the ALJ concluded that Plaintiff was unable to perform any past relevant work. (*Id.* at 30). At Step Five, the ALJ found that Plaintiff could make sufficient adjustments to perform a significant number of jobs in the national economy given his age, education, work experience, and RFC. (*Id.* at 31). Examples of such jobs included small products assembler, housekeeping cleaner, and rental clerk. (*Id.* at 31–32). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act from the alleged onset date through September 26, 2023. (*Id.* at 32).

## II.   LEGAL STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). "Substantial" evidence involves "more than a mere scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). The Court, in its review, must consider the record in its entirety, "weighing both the evidence that supports and evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2007)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving

conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion."). Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if, despite the legal error, 'the agency's path may reasonably be discerned ....'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citation omitted).

### III. DISCUSSION

Plaintiff claims that the ALJ committed materially harmful error by rejecting Plaintiff's symptom testimony "in the absence of specific, clear, and convincing reasons" for doing so. (Doc. 17 at 9). Conversely, Defendant argues that the ALJ provided "multiple valid reasons, supported by substantial evidence," for rejecting Plaintiff's physical complaints. (Doc. 18 at 5).

#### A. Plaintiff's Symptom Testimony

In the Ninth Circuit, a two-step analysis is required when determining the credibility of a claimant's testimony regarding subjective symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must decide if there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal citation and quotation marks omitted). Next, if there is such objective evidence, there is no malingering present, and the ALJ finds the claimant's testimony to be unpersuasive, the ALJ must then explain his decision, including "cogent

reasons for the disbelief." *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (quoting *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 2014)). The ALJ must provide "specific, clear, and convincing reasons" for rejecting the claimant's testimony. *Ferguson v. O'Malley*, 95 F.4th 1194, 1197 (9th Cir. 2024). This is the most demanding standard in Social Security cases. *Id.* The reasons for an adverse credibility determination are sufficiently specific if the ALJ identifies "what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Such reasons are clear and convincing where the "ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

In his evaluation of the credibility of a claimant's subjective testimony, the ALJ must rely on factors such as contradictions within the claimant's testimony, conflicts between the testimony and conduct or medical evidence of record, or reasons unrelated to the testimony (for example, previous deceitful behavior). *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). In rejecting a claimant's testimony, the ALJ is required to specify which testimony was not credible and the evidence undermining it. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (citation omitted). The ALJ's explanation for rejecting the testimony must include "specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and subsequent reviewers can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 82 Fed. Reg. 49462, 49467 (Oct. 25, 2017). A reviewing court must be able to conclude that the ALJ's rejection of a claimant's testimony was not arbitrary, and when an ALJ's reasoning cannot "reasonably be discerned," reversal of the ALJ's decision is warranted. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1997); *Treichler*, 775 F.3d at 1103.

Here, in his written decision, the ALJ summarized Plaintiff's subjective symptoms, paraphrasing as follows:

> The claimant's medical records document the history of his

>       right shoulder avascular necrosis and right hip arthroplasty for
>       avascular necrosis. Because of these impairments the claimant
>       states that he experiences chronic right hip and right shoulder
>       pain that movement exacerbates especially walking. He further
>       explains that he has difficulty lifting the right arm or reaching
>       behind him. He has also endorsed intermittent achiness of his
>       hips if he stands or walks more than 8 hours (Ex. 9F/2; Hearing
>       Testimony).
>
>       Because of these impairments and their associated symptoms,
>       the claimant states that he experiences difficulties in the
>       following functional areas: lifting, squatting, bending,
>       standing, reaching, walking, sitting, kneeling, and stair
>       climbing (Ex. 5E/6; Hearing Testimony). He particularly
>       testified that he can only walk about 1 block, can stand about
>       1-half hour, and can sit no more than 15-20 minutes before
>       needing to switch positions or stand up. He also stated that he
>       must lie down for about 1.5 to 4 hours per day due to the pain
>       caused by his physical conditions. Because of these
>       difficulties, the claimant indicates that he has difficulties with
>       dressing, bathing, hair care, shaving, feeding self, toileting,
>       lifting, squatting, bending, standing, reaching, walking, sitting,
>       kneeling, stair climbing, and using hands (5E/1-7, 11E1-6;
>       Hearing Testimony).

(Doc. 13-3 at 27). Following that summary, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" and did not find that Plaintiff was malingering. (*Id.*) However, the ALJ also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his alleged] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*) Because the ALJ did not find that Plaintiff was malingering, the Court must determine whether the ALJ gave specific, clear, and convincing reasons for partly discrediting Plaintiff's symptom testimony.

### 1. Activities of Daily Living

Plaintiff first argues that the ALJ erred in rejecting Plaintiff's subjective symptom testimony because it was inconsistent with his reported activities of daily living. (Doc. 17 at 10). The ALJ found that Plaintiff's activities of daily living contradicted the level of

impairment he claimed, explaining the following:

> Generally, the claimant's daily activities are inconsistent with the extent of his alleged limitations. Although [he] reports some difficulties with aspects of his personal hygiene, he is generally able to manage his personal care independently. He can also prepare simple[] and complex meals and perform multiple household chores, including doing the laundry and the dishes. The cla[i]mant also shops in stores, where he ambulates without assistance (Ex. 5E/1-7; Hearing Testimony). Overall, these activities suggest that the claimant's limitations are not as severe as alleged and that he can perform within the restrictions of the residual functional capacity.

(Doc. 13-3 at 27).

In the Ninth Circuit, a claimant's engagement in daily activities is a valid factor for an ALJ to consider in assessing his credibility. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Though it is not required that a claimant "vegetate in a dark room" to be eligible for benefits, *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (quotation omitted), the claimant's daily activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," even when those activities suggest some difficulty functioning. *Molina v. Astrue*, 674 F.3d F.3d 1104, 1113 (9th Cir. 2012) (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010)). Hence, the Court finds that although Plaintiff stated that he had difficulty functioning, the ALJ properly discounted his credibility to the extent that his daily activities were inconsistent with an inability to work in any capacity. *See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that the claimant's ability to "take care of [his] personal needs, prepare easy meals, do light housework and shop for some groceries ... may be seen as inconsistent with the presence of a condition which would preclude all work activity." (citations omitted)).

Plaintiff contends that, ultimately, the ALJ did not find that a substantial part of a typical day was spent engaged in activities inconsistent with Plaintiff's claimed limitations. (Doc. 17 at 10). Plaintiff also claims that the ALJ's "simple list of activities, without any

information as to the demands, frequency, or duration of those activities, does not show any contradiction with [Plaintiff's] reported symptoms." (*Id.* at 11). The Court acknowledges that the length of time or frequency with which Plaintiff performed his daily activities may be unclear from the evidence. Regardless, the Court declines to second-guess the ALJ's reasonable determination to the contrary, despite the possibility that the evidence could result in inferences more favorable to Plaintiff. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (holding that, even when the record was ambiguous about the frequency and duration of Plaintiff's engagement in daily activities, if the ALJ's interpretation was reasonable, the court would not second-guess it).

Here, the ALJ reached a reasonable determination based on substantial evidence that Plaintiff's daily activities were incompatible with the severity of his alleged symptoms, i.e., the extent of his alleged impairment-induced limitations. Accordingly, Plaintiff's daily activities are a clear and convincing reason to discount his symptom testimony. *See Ghanim*, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.").

### 2. Medical Evidence

Plaintiff additionally argues that the ALJ erred in rejecting Plaintiff's subjective symptom testimony, reasoning that it conflicted with the medical evidence of record. (Doc. 17 at 11–15). The Ninth Circuit has held that "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). A claimant need not produce evidence to demonstrate his symptom severity. *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991). Nonetheless, when the evidence produced contradicts Plaintiff's symptom testimony, the ALJ can use it as a sufficient reason to reject the testimony. *See, e.g.*, *Carmickle*, 533 F.3d at 1661; *Alto v. Saul*, 818 Fed. App'x. 734, 737 (9th Cir. 2020); *Everson v. Colvin*, 577 Fed. App'x. 743, 744 (9th Cir. 2014).

Specifically, Plaintiff claims the ALJ erred when he "failed to connect anything specific in the records summarized while determining the RFC to any specific

inconsistency in [Plaintiff's] symptom testimony." (Doc. 17 at 13). However, the Court disagrees. Plaintiff's symptom testimony includes limitations resulting from his impairments, including "difficulties with dressing, bathing, hair care, shaving, feeding self, toileting, lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and using hands." (Doc. 13-3 at 27). The ALJ directly addressed this part of Plaintiff's testimony by stating, "the claimant's statements regarding the *limiting effect of his impairments* are not consistent with the restrictions established in his treatment notes." (*Id.*) (emphasis added). The ALJ then provided several examples of normal or improved findings following Plaintiff's hip surgery, e.g., "[by November 18, 2021] claimant's condition improved such that the diagnostic findings related to his right hip were unremarkable"; "[in] December 2022 the claimant's treatment notes … indicate that he had no pain concerns or complaint and was very happy with his range of motion"; and "his July 5, 2022, medical examination noted that the claimant's range of motion was painless." (*Id.* at 27). This evidence contradicts Plaintiff's reports of difficulty "with lifting, squatting, bending, standing,… walking, sitting, kneeling, [and] stair climbing." (*Id.*)

Similarly, the ALJ cited examples of medical evidence demonstrating normal to mild findings regarding Plaintiff's right shoulder and arm prior to his August 2, 2022, right shoulder surgery, e.g., "[Plaintiff] still demonstrated active range of motion across his [elbow], wrist, and hand, as well as intact sensation through his arm, forearm, wrist, and hand (Ex. 3F/9; 4F 7; 13F/5)"; and "just as with the previous physical examinations, [Plaintiff's] elbows, wrists, fingers, and thumbs demonstrated functional range of motion (Ex. 9F/3)." (*Id.* at 28). The ALJ also highlighted post-surgery evidence, i.e., "[a] physical therapy note from November 2, 2022, not[ed] that the claimant had only minor range of motion limitations." (*Id.*) These examples of evidence conflict with Plaintiff's reported difficulties "with dressing, bathing, hair care, shaving, feeding self,… reaching,… and using hands." (Doc. 17 at 27).

The Court recognizes that the ALJ perhaps could have connected the aforementioned evidence to specific limitations in Plaintiff's testimony in greater detail.

1  However, the Court finds it was able to reasonably discern which of Plaintiff's testimony
2  the ALJ considered to be inconsistent with the evidence the ALJ highlighted. Therefore,
3  the Court concludes the ALJ did not err in this regard, for even if an ALJ's decision is
4  made "with less than ideal clarity, a reviewing court will not upset the decision on that
5  account if his path may reasonably be discerned." *Alaska Dept. of Env't. Conservation v.*
6  *E.P.A.*, 540 U.S. 461, 497 (2004); *see Brown-Hunter*, 806 F.3d at 492 (applying this
7  standard to Social Security).

8  Plaintiff further asserts that the ALJ erred in rejecting Plaintiff's symptom testimony
9  because "the ALJ cherry-picked isolated notes of improvement and failed to cite evidence
10 that any improvement was sustained." (Doc. 17 at 12). In support of this assertion, Plaintiff
11 points to several items of evidence in the record demonstrating that following his June 2021
12 right hip and August 2022 right shoulder surgery recovery periods, Plaintiff's "pain in both
13 joints continued." *Id.* at 11–12. In contrast, the ALJ reported multiple examples of reported
14 improvement in Plaintiff's hip and shoulder symptoms following these procedures. *Supra*
15 Subsection III.A.2. However, as previously discussed, the ALJ—not this Court—is
16 responsible for resolving conflicts in medical testimony and drawing logical inferences
17 from the medical record. See *Andrews*, 53 F.3d at 1039. As such, the Court declines
18 Plaintiff's request to second guess the ALJ's reasonable interpretation of the evidence, even
19 if such interpretation could give rise to inferences more favorable to Plaintiff. *See Rollins*,
20 261 F.3d at 857 (holding that, even when the medical record was equivocal, the court would
21 not second-guess the ALJ's interpretation so long as it was reasonable).

22 Accordingly, Plaintiff's documented improvement following surgery constitutes a
23 specific, clear, and convincing reason supported by substantial evidence to discredit
24 Plaintiff's subjective symptom testimony regarding the extent of his alleged limitations.
25 *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d
26 1428, 1434 (9th Cir. 1995) (holding that evidence of effective treatment is sufficient to
27 discount Plaintiff's testimony regarding symptom severity)); *see also Singh v. Comm'r of*
28 *Soc. Sec. Admin.*, No. CV-19-02315-PHX-MTM, 2020 WL 5757620, *2–3 (D. Ariz. Sept.

28, 2020) (affirming the ALJ's discounting of Plaintiff's testimony, in part, because Plaintiff's conditions improved with treatment).

Additionally, Plaintiff also claims that "the ALJ erred by failing to adequately consider the progression of [Plaintiff's] symptoms over time" in his decision regarding Plaintiff's symptom testimony. (Doc. 17 at 15). However, the ALJ did discuss the progression of plaintiff's reported pain and range of motion symptoms in a chronological fashion—starting as early as April 2021 for his hip-related symptoms, and as early as February 2021 for his shoulder and arm-related symptoms—up to and following his two surgical procedures. (Doc. 13-3 at 27–29). Regardless, to the extent that the ALJ may have erred in discrediting Plaintiff's subjective symptom testimony by not fully appreciating the progression of his symptoms over time, the error is harmless given the Court's findings in the previous subsection. *See Carmickle*, 533 F.3d at 1162–63 (indicating that an ALJ's error is harmless provided his "remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence in the record.").

Ultimately, the Court concludes that the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony by pointing to specific evidence throughout the record that contradicted Plaintiff's subjective symptoms. Thus, substantial evidence supports the ALJ's decision. Accordingly, the Court finds the ALJ committed no harmful legal error.

### B. Further Proceedings

Finally, Plaintiff requests remand for a calculation of benefits pursuant to the credit-as-true rule, or in the alternative, further administrative proceedings. (Doc. 17 at 16–17). However, because the Court is upholding the ALJ's decision, the Court denies Plaintiff's request for remand without considering the credit-as-true doctrine. *See Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017), as amended (Jan. 25, 2018) (stating a direct award of benefits is only appropriate "when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits").

**IV. CONCLUSION**

Based on the foregoing,

**IT IS ORDERED** that the ALJ's decision is AFFIRMED and the Clerk of the Court shall enter judgment accordingly.

Dated this 17th day of December, 2024.

James A. Teilborg
Senior United States District Judge